
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PHYSICIANS FOR SOCIAL RESPONSIBILITY-LOS ANGELES; et al., | No. 14-73362 |
| Petitioners, | MEMORANDUM* |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; et al., | |
| Respondents, | |
| SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, | |
| Respondent-Intervenor. | |

On Petition for Review of a Final Rule of the
Environmental Protection Agency

Argued and Submitted May 11, 2016
San Francisco, California

Before: FARRIS, O'SCANNLAIN, and CHRISTEN, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Petitioners challenge aspects of EPA's approval of revisions to California's state implementation plan for the Los Angeles-South Coast Air Basin, including an attainment demonstration for the revoked one-hour national ambient air quality standard for ozone. Approval and Promulgation of Implementation Plans for South Coast, 79 Fed. Reg. 52526 (Sept. 3, 2014). We deny the petition.

Under the Clean Air Act, challenges to certain EPA actions must be filed no later than sixty days from the date that notice of the action appears in the Federal Register. 42 U.S.C. § 7607(b)(1). EPA required California to submit the instant state implementation plan revisions to correct inadequate compliance with California's obligation to adopt and implement a plan providing for attainment of the one-hour ozone standard. *See* Finding of Substantial Inadequacy of Implementation Plan and Call for California State Implementation Plan Revision for South Coast, 78 Fed. Reg. 889 (Jan. 7, 2013). That action, unchallenged by Petitioners, was expressly undertaken pursuant to 42 U.S.C. § 7410(k)(5), not 42 U.S.C. § 7509(c). 78 Fed. Reg. 893. Petitioners' attempt to argue that the approved attainment deadline should have been adjusted under 42 U.S.C. § 7509(d) is therefore untimely and we deny this portion of the petition.

Petitioners' remaining challenges are timely and we have jurisdiction under 42 U.S.C. § 7607(b)(1). We review EPA's interpretation of the Clean Air Act by applying the framework from *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837,

842-43 (1984). *Comm. for a Better Arvin v. Arvin*, 786 F.3d 1169, 1175 (9th Cir. 2015). Petitioners' challenge to the approved attainment demonstration's inclusion of new technology measures fails. Congress did not speak to the precise meaning of "applicable dates" in 42 U.S.C. § 7511a(e)(5)(B), and EPA has reasonably resolved that "applicable dates" includes dates validly adjusted pursuant to 42 U.S.C. § 7410(k)(5).

Petitioners also argue that the tonnage commitments included in the approved attainment demonstration are unenforceable and therefore contrary to law. This Court recently found materially identical commitments to be enforceable when reviewing EPA's approval of California's state implementation plan for the San Joaquin Valley for compliance with the national eight-hour ozone standard. *Comm. for a Better Arvin*, 786 F.3d at 1179-80. We are not convinced by Petitioners' attempt to distinguish that case. Title 42 U.S.C. § 7410(*l*) continues to apply to the one-hour ozone standard, regardless of the revocation of that standard, by virtue of the statutory anti-backsliding obligations which remain. *See* 42 U.S.C. § 7410(*l*) ("The Administrator shall not approve a revision of a plan if the plan would interfere with any . . . applicable requirement of this chapter."); *S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 899 (D.C. Cir. 2006) (holding that "the anti-backsliding limitations" remain as requirements applicable to the one-hour ozone standard).

3

**DENIED**.

*Physicians for Social Responsibility v. EPA*, No. 14-73362

Christen, Circuit Judge, concurring:

I agree with the memorandum disposition, which I join in full. I write separately to emphasize the importance of contingency measures where, as here, EPA approves a state implementation plan (SIP) that includes section 182(e)(5) "new technology measures." *See* 42 U.S.C. § 7511a(e)(5)(B).

California's 2013 SIP for the South Coast "relies on three types of strategies to reduce basin-wide emissions to the extent necessary to demonstrate attainment of the 1-hour ozone standard": (1) implementation of reasonably available control measures (RACM); (2) "commitments made by [the local and state air quality control boards] to bring certain regulatory initiatives to their respective boards on a certain schedule and to meet certain aggregate emissions reductions in certain years"; and (3) new technology measures. *See* Approval & Promulgation of Implementation Plans; California; South Coast 1-Hour & 8-Hour Ozone, Proposed Rule, 79 Fed. Reg. 29,712, 29,718 (May 23, 2014). The South Coast 2013 SIP also includes, as required by the Clean Air Act, "enforceable commitments to develop and adopt contingency measures . . . if the anticipated [new] technologies do not achieve planned reductions." 42 U.S.C. § 7511a(e)(5)(B). EPA approved California's use of "new technology measures" after determining that the South

1

Coast cannot achieve the 1-hour standard by relying on existing reduction strategies alone. *See* 79 Fed. Reg. at 29,722. I agree with my colleagues that EPA's reading of the Clean Air Act as permitting post-2010 plans to include "new technology measures" is reasonable.

But prior versions of the South Coast's SIP likewise included "new technology measures" and the statutorily required "enforceable commitments to develop and adopt contingency measures" if the new technology measures failed. 42 U.S.C. § 7511a(e)(5)(B); Approval & Promulgation of State Implementation Plans; California—South Coast, 65 Fed. Reg. 6,091, 6,093, 6,099 (Feb. 8, 2000). The record in this case does not reveal whether those contingency measures triggered when the South Coast failed to attain the 1-hour standard by the 2010 deadline, but petitioners' counsel's responses to questions posed at oral argument suggest that the contingencies did not trigger because California withdrew them, and other control measures, from the South Coast SIP in 2008. *See Association of Irritated Residents v. EPA*, 686 F.3d 668, 673 (9th Cir. 2011) ("In 2008, California withdrew some of the 2003 Attainment Plan's key elements, including many of the control measures."). In 2009, EPA partially disapproved of California's decision to withdraw control measures from its SIP, but it did not require the State to develop a new SIP to correct the error. Concerned citizens sued, and in

2

*Association of Irritated Residents* we held that EPA could not ignore the State's new, inadequate plan, but rather needed to solicit from California a revised SIP that demonstrated how the South Coast would attain the relevant ozone standard. *Id.* at 677.

*Association of Irritated Residents* clarified that EPA may not permit a state to delete from its SIP control measures that give the SIP teeth, such as section 182(e)(5) contingency measures. As is relevant here, *Association of Irritated Residents* ensures that the section 182(e)(5) contingency measures incorporated into the South Coast's 2013 SIP will be there when the South Coast anticipates that its new technology measures will achieve planned reductions. Hopefully the new technology measures function as promised; if not, the contingency measures should trigger as the Clean Air Act requires. *See* 42 U.S.C. § 7511a(e)(5)(B).